IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

REBECCA SHAW,

        Plaintiff,

  v.                                       Civil Action 2:15-cv-3033
                                              Judge George C. Smith
                                              Magistrate Judge Jolson

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Rebecca Shaw filed this action under 42 U.S.C. §§ 405(g) and 1383(c) seeking review of the Commissioner of Social Security's (the "Commissioner") denial of her application for disability insurance benefits and supplemental social security income.  For the reasons that follow, it is **RECOMMENDED** that Plaintiff's statement of errors be **OVERRULED** and judgment be entered in favor of the Commissioner.

**I. BACKGROUND**

**A.**     **Prior Proceedings**

Plaintiff filed her applications for benefits on August 11, 2011, with an alleged disability onset date of July 1, 2009.  (Doc. 9 at Tr. 189, 191, PAGEID #: 242, 244).  After denials of her claims on November 1, 2011 (*see id.* at Tr. 139, 142, PAGEID #: 192, 195), Plaintiff appeared for a hearing before Administrative Law Judge Edmund E. Giorgione (the "ALJ") on August 19, 2013 (*id* at Tr. 44, PAGEID #: 97).  The ALJ denied benefits on January 14, 2014.  (*Id.* at Tr. 36–37, PAGEID #: 89–90).  That became the Commissioner's final decision when the Appeals Council denied review on March 25, 2015.  (*Id.* at Tr. 10, PAGEID #: 63).  Plaintiff appeals

1

without the assistance of counsel. (Doc. 9 (administrative record); Doc. 15 (statement of errors); Doc. 16 (memorandum in opposition)).

**B.     Testimony at the Administrative Hearing**

Although Plaintiff proceeds pro se on appeal, she was represented by counsel at the administrative hearing. At the administrative hearing, Plaintiff's counsel argued for benefits based upon issues with her left knee and back, as well as upon "some asthmatic-related conditions." (*Id.* at Tr. 46, PAGEID #: 99). Moreover, Plaintiff's counsel argued that Plaintiff suffered from "adjustment disorder," which counsel described as "a severe impairment from a psychological standpoint." (*Id.*).

At the time of the administrative hearing, Plaintiff was 53 years old with two years of college education. (Doc. 9 at Tr. 47, PAGEID #: 100). She began by testifying about her past work experience. Most recently, she was laid off as an administrative assistant. (*Id.* at Tr. 49, PAGEID #: 102). Before that, she worked at the Red Cross for over a decade, including as a secretary, as a customer service representative, and a volunteer CPR instructor. (*See id.* at Tr. 49–50, PAGEID #: 102–03).

Regarding her health issues, Plaintiff testified that she has difficulty walking more than a city block. (*See id.* at Tr. 52, 58, PAGEID #: 105, 111). She told the ALJ she also had hand pain, but that she had not been diagnosed with carpal tunnel syndrome and had not sought medical treatment for the problem. (*See id.* at Tr. 53, PAGEID #: 106). Plaintiff testified that she could not sit for more than thirty minutes at any one time, and could only stand for ten minutes at a time. (*See id.*). Moreover, Plaintiff testified that she used an inhaler because she had an asthma attack once or twice per year. (*Id.* at Tr. 57, PAGEID #: 110).

2

In addition, Plaintiff testified about her social life and her ability to care for herself. She attended church and had several church friends. (*See id.* at Tr. 55, PAGEID #: 108). She was capable of dressing and bathing herself, was able to drive herself, and did her own cooking, dishes, laundry, and vacuuming; but could not garden. (*See id.* at Tr. 55–56, PAGEID #: 108–09). Plaintiff told the ALJ that she needed her son's help when grocery shopping because it hurt her back and "legs too much to walk two steps, stop, pick up whatever we need and put it in the cart and then go on." (*Id.* at Tr. 58, PAGEID #: 111). Plaintiff testified that she felt limited by her depression, in that she "over-analyze[d]" herself and felt "stupid" whenever she received constructive feedback. (*Id.* at Tr. 59, PAGEID #: 112). Finally, Plaintiff addressed her alleged onset date of July 1, 2009. She was involved in a traffic incident at that time, which resulted in "two years of chiropractic treatment on [her] neck and back," "a lot more trouble healing" any time she had an injury, and arthroscopic knee surgery. (*Id.* at Tr. 61, PAGEID #: 114). Because of her knee injury and surgery, Plaintiff testified that she took stairs one step at a time and that she experienced pain while walking. (*Id.* at Tr. 62, PAGEID #: 115).

C.     **Medical Background**

On July 3, 2009, Plaintiff went to the emergency room at Mount Carmel East in Columbus, Ohio for chest and knee pain from a motor vehicle accident two nights prior. (Doc. 9 at Tr. 275–77, PAGEID #: 328–30). Her rib x-rays were normal, and she was diagnosed with a chest wall contusion. (*Id.* at Tr. 278, PAGEID #: 331). Regarding her knee, the treatment notes state that there "[we]re no" "musculoskeletal . . . deformities noted in all four extremities." (*Id.*). Plaintiff presented to Mount Carmel East's emergency room on one prior occasion, on June 6, 2009, complaining of shortness of breath. (*Id.* at Tr. 285, PAGEID #: 338; *see id.* at Tr. 287, PAGEID #: 340). She was given an albuterol inhaler and then "discharged with instructions to

3

follow [up] in the outpatient clinic and return if worse." (*Id.* at Tr. 288, PAGEID #: 341). Over a year later, on August 20, 2010, Plaintiff went to Grant Medical Center in Columbus, Ohio complaining of coughing and wheezing after she ran out of her albuterol inhaler; Plaintiff was given a prescription for another albuterol inhaler and was discharged. (*Id.* at Tr. 308–09, PAGEID #: 361–62).

The record also contains one set of treatment records from Dr. Jeremy Mathis. Plaintiff saw Dr. Mathis on September 2, 2009, and November 11, 2009, for left knee pain. (*Id.* at Tr. 293, PAGEID #: 346). During the September visit, Dr. Mathis observed "medial joint line tenderness" in Plaintiff's left knee, but that Plaintiff otherwise had full range of motion, no instability, and "5/5 strength of quads and hamstrings." (*Id.* at Tr. 294, PAGEID #: 347). Based on his examination and a recent MRI, Dr. Mathis concluded that Plaintiff's left knee had a "subchondral cyst," a "torn medial meniscus," and "evidence of a loose body." (*Id.*). Upon consultation with Plaintiff, Dr. Mathis recommended a kneescope. (*Id.* at Tr. 295, PAGEID #: 348; *see id.* at Tr. 293, PAGEID #: 346 (same findings during the visit on November 11, 2009)). Dr. Mathis performed Plaintiff's knee surgery on December 14, 2009. (*Id.* at Tr. 298, PAGEID #: 351).

Plaintiff returned to Grant Medical Center with cervical spine pain on May 2, 2012, following an alleged assault. (*See id.* at Tr. 431, PAGEID #: 484). The treating doctors concluded that Plaintiff did not have any acute fractures or subluxations, but had mild multilevel degenerative changes of the spine. (*Id.*).

Finally, the record contains two consultative examiner reports. James Tanley conducted a psychological examination of Plaintiff on May 7, 2012. (*Id.* at Tr. 409, PAGEID #: 462). He found Plaintiff's cognitive abilities to fall in the "Average" range; noted that she "made an

4

unremarkable social presentation" during her examination; and noted that her ability to perform at work might be affected by the fact that she displayed "a measure of depression," even though she reported no "history of mental or emotional deterioration in response to work pressure." (*Id.* at Tr. 412, PAGEID #: 465). Plaintiff saw Dr. Herbert Grodner for a physical examination on June 4, 2012. Dr. Grodner found that Plaintiff had "lower back pain" that resulted in a "decreased range of motion that would make it difficult for weight bearing" work. (*Id.* at Tr. 420, PAGEID #: 473). Beyond that, he concluded that her "[k]nee exam" was "unremarkable," that her overall "physical examination [wa]s essentially unremarkable," and "that the objective physical findings indicate that she could at least attempt some type of sedentary activity." (*Id.* at Tr. 420–21, PAGEID #: 473–74).

D.     **The ALJ's Decision**

The ALJ issued his decision on January 14, 2014. (Doc. 9 at Tr. 37, PAGEID #: 90). He found the following severe impairments: "degenerative disc and joint disease of the lumbar and cervical spine; status post left knee meniscectomy and chondroplasty; asthma; and obesity. (*Id.* at Tr. 25, PAGEID #: 78). At step four, the ALJ concluded Plaintiff "has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 4 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; frequently balance; and occasionally climb ramps/stairs, stoop, knee, crouch, and crawl." (*Id.* at Tr. 29, PAGEID #: 82). In making that assessment, the ALJ found Plaintiff's testimony not entirely credible regarding the extent of her impairment-related symptoms. (*See id.* at Tr. 31, PAGEID #: 84). In particular, the ALJ noted the lack of significant examination findings to support Plaintiff's allegations, as well as Plaintiff's infrequent complaints of neck and back pain to treating sources. (*See id.* at Tr. 32, PAGEID #: 85; *see also id.* at Tr. 287, PAGEID #: 340 (Plaintiff denying back pain)). The

5

ALJ then held that, given her limitations, Plaintiff would not be "able to perform her past relevant work." (*Id.* at Tr. 35, PAGEID #: 88). However, based upon all the testimony presented, including that of the vocational expert, the ALJ held that Plaintiff would be able to perform the requirements of a number of representative occupations, including assembler, sorter, and counter attendant. (*Id.* at Tr. 36, PAGEID #: 89). Given this, and given the testimony that such jobs occur in the region where Plaintiff lives, the ALJ denied benefits. (*Id.*).

E. **Plaintiff's Letter to the Court**

Plaintiff submitted a hand-written letter to the Court challenging the ALJ's decision. (Doc. 12). She describes a number of physical and emotional issues, including back and chest pain, alleged carpal tunnel syndrome, her knee problems, and the stress she faces at home from caring for her elderly father and a son dealing with mental and physical problems of his own. (*Id.* at 1–3). She concludes by recounting her family history of similar medical issues. (*Id.* at 4–5). On April 27, 2016, the Court construed Plaintiff's letter as her statement of errors. (Doc. 14). Following the Commissioner's response (Doc. 15), Plaintiff filed a reply brief reiterating the severity of her pain (Doc. 16).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. §405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The

6

Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. Nat'l Labor Relations Bd.*, 296 F.3d 384, 395 (6th Cir. 2002).

### III. DISCUSSION

Plaintiff proceeds without the assistance of counsel. Because Plaintiff's statement of errors and reply brief stress the severity of her pain and ailments, the undersigned construes Plaintiff's filings to challenge the ALJ's determination that her testimony regarding pain was not entirely credible. *See Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985) (stating that pro se pleadings "are entitled to a liberal construction"); *McNier v. Comm'r of Soc. Sec.*, __ F. Supp. 3d. __, No. 3:14-CV-380, 2016 WL 743444, at *1 (S.D. Ohio Feb. 23, 2016) ("The Court liberally construes pro se Plaintiff's Statement of Errors . . . .").

An administrative law judge is not required to accept a claimant's subjective complaints, but may instead properly consider the credibility of a claimant. S*ee Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Because the administrative law judge has the opportunity to observe a witness's demeanor while testifying, her credibility determinations are accorded great weight and deference. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, credibility determinations must be clearly explained. *Auer v. Sec'y of Health and Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, the Court is without authority to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

Here, the ALJ found Plaintiff's testimony not entirely credible regarding the extent of her impairment-related symptoms. (*See* Doc. 9 at Tr. 31, PAGEID #: 84). In reaching this conclusion, the ALJ considered Plaintiff's complaints of "incapacitating discomfort," her limited ability to walk great distances, her inability to sit or stand for extended periods of time, her asthma, and her hand pain. (*Id.* at Tr. 30–31, PAGEID #: 83–84).

In addition, the ALJ cited evidence that undercut the extent of Plaintiff's pain. Regarding her back pain, he explained that "a CIT scan of the claimant's cervical spine in May 2012 revealed *mild* multi-level degenerative changes." (*Id.* at Tr. 32, PAGEID #: 85 (emphasis in original)). Additionally, Plaintiff displayed only "*mildly* reduced range of motion in her back" during a doctor's visit in August 2011. (*Id.* (emphasis in original)). Moreover, at her consultative examination, Plaintiff had a normal gait, could walk without an ambulatory aid, could partially squat, displayed "5/5 strength," and "had a negative straight leg raise." Further, he explained, the record did not contain any consistent treatment for Plaintiff's back, or for her knee following her surgery. (*See id.*). Regarding her alleged carpal tunnel syndrome, the ALJ noted the lack of an objective diagnosis, as well as Plaintiff exhibiting normal hand strength during her consultative examination. (*Id.* at Tr. 33, PAGEID #: 86). In assessing Plaintiff's asthma-related concerns, the ALJ cited, among other things, multiple physical examinations where Plaintiff's lungs were clear, an x-ray showing no abnormalities, and Plaintiff's inconsistent use of her inhaler. (*Id.* at Tr. 33–34, PAGEID #: 86–87). Finally, as the ALJ explained, Plaintiff's daily activities were not restricted in any meaningful way. (*Id.* at Tr. 34, PAGEID #: 87 ("[T]he claimant is able to dress herself, check emails, check the mail, check Facebook, look for jobs online, talk [to] and text her son, cook, wash dishes, take care of her cat, do laundry, do some cleaning, attend church . . . , go to the bank, and grocery shop.")).

8

The ALJ's explanation is supported by the record. (*See, e.g.*, *id.* at Tr. 55–57, PAGEID #: 108–110 (Plaintiff's testimony regarding her daily activities and ability to care for herself); *id.* at Tr. 278, PAGEID #: 331 (normal rib x-rays following Plaintiff's car accident); *id.* (noting no "musculoskeletal . . . deformities noted in all four extremities" following Plaintiff's car accident); *id.* at Tr. 294, PAGEID #: 347 (prior to knee surgery, Plaintiff displayed full range of motion, no instability, and "5/5 strength of quads and hamstrings."); *id.* at Tr. 406, PAGEID #: 459 (August 15, 2011, physician treatment notes finding no range-of-motion limitations associated with Plaintiff's knees); *id.* at Tr. 412, PAGEID #: 465 (consultative examiner finding Plaintiff's intelligence to be in the "Average" range, and citing no "history of mental or emotional deterioration in response to work pressure"); *id.* at Tr. 420, PAGEID #: 473 (consultative examiner concluding Plaintiff could walk normally without ambulatory aid, "partially squat," had "5 out of 5" strength in "all muscle groups"); *id.* at Tr. 420–21, PAGEID #: 473–74 (consultative examiner concluding Plaintiff "could at least attempt some type of sedentary activity" given that her "physical examination [wa]s essentially unremarkable")).

Plaintiff challenges the ALJ's assessment by recounting her ailments and alleging great pain. Here, however, the Court must answer only one question: whether the ALJ's credibility determination is supported by substantial evidence. *See, e.g.*, *Felisky*, 35 F.3d at 1035. As set forth above, there is "more than a scintilla of evidence" that a reasonable mind might accept to support the ALJ's conclusion that Plaintiff could perform light work. *See, e.g.*, *id.* ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm." (citations omitted)). Because substantial evidence supports the ALJ's decision, it must be upheld.

9

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that the Plaintiff's statement of errors be **OVERRULED** and that judgment be entered in favor of the Commissioner.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A district judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.

Date: September 1, 2016  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE